**Marie Jose Catalano KINCAID, Plaintiff–Appellee,**

v.

**William Bryan KINCAID, Jr., Defendant–Appellant.**

Court of Appeals of Tennessee, Western Section, at Nashville.

May 12, 1995.

Application for Permission to Appeal Denied by Supreme Court Aug. 28 1995.

Mike W. Binkley of Nashville, for Plaintiff–Appellee.

Richard R. Clark of Nashville, for Defendant–Appellant.

CRAWFORD, Judge.

This is an appeal from a Final Decree of Divorce entered July 22, 1994. The parties, William Bryan Kincaid, Jr. (hereinafter Husband) and Marie Jose Catalano Kincaid (hereinafter Wife), were married in January of 1979. No children were born to the marriage.

The parties relationship gradually deteriorated over the course of their marriage, culminating in Wife's filing for divorce in February of 1992. In her complaint, Wife alleged irreconcilable differences and inappropriate marital conduct. Husband's answer denied inappropriate marital conduct, and admitted irreconcilable differences. In addition, Husband filed a counterclaim asserting inappropriate marital conduct by Wife. After a two day trial, the court entered a final decree that, *inter alia*, declared the parties to be divorced pursuant to T.C.A. § 36–4–129 (1991), divided the marital property, and ordered Husband to pay alimony *in futuro*. Husband has appealed and presents two issues for review. Wife, appellee, also raises two issues on appeal.

Husband's first issue is whether the trial court erred in failing to equitably divide the marital property as provided by T.C.A. § 36–4–121(a)(1) (1991). Husband's only objection to the court's division of marital property is the treatment of the marital home. The court accepted the parties stipulation that the home was worth Seventy–Five Thousand Dollars ($75,000), ordered the parties to sell the home, and ordered that the proceeds of the sale be divided equally. Husband asserts that the trial court erred in failing to recognize the parties' intent to treat their individual contributions to the cost of the home as separate property.

Since the trial court heard this case sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against these findings, we must affirm, absent error of law. T.R.A.P. 13(d). Trial courts have broad discretion in dividing the marital estate upon divorce. *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn.App.1993); *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn.App.1984).

The parties purchased the marital home in 1985 for Sixty–One Thousand Dollars ($61,000), and title was taken as tenants by the entirety. The initial payment of Thirty–Two Thousand Dollars ($32,000) came from Husband's inheritance from his father. From the time the home was purchased through the time when the parties separated, Husband paid the mortgage payment and utility bills out of his personal account. Wife paid for improvements to and maintenance of the home out of her personal account. In 1989, the parties paid off the home mortgage in the amount of Twenty–Six Thousand Eight Hundred and Fifty–Nine Dollars ($26,859), and stipulated that Twenty Thousand Dollars ($20,000) of this amount was a joint gift from Husband's mother, and that around Seven Thousand Dollars ($7,000) was derived from Wife's separate account.

When spouses acquire real property as joint tenants, a rebuttable presumption exists that the purchasing spouse made a gift to the marital estate. *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn.App.1991); *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. App.1988). From our review of the record, we cannot say that the evidence preponderates against the trial court's finding that Husband failed to rebut this presumption. All subsequent payments on the mortgage were marital funds in that they were derived either from Husband's wages or from joint gift proceeds. Husband allowed Wife to spend significant funds in the upkeep and maintenance of the home, and Husband allowed Wife to utilize her separate funds to payoff the mortgage in 1989. We find no

error in the trial court's division of the marital home.

■ Husband's next issue is whether the trial court erred in awarding Wife alimony *in futuro* rather than rehabilitative alimony. T.C.A. § 36–5–101(d)(1) (1994) provides:

(d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36–4–121;

(I) The standard of living the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The trial court correctly determined that Wife should be awarded alimony. The record reveals that Husband has a greater earning capacity, superior education, better job training, and that Wife needs some support. However, giving due consideration to all relevant factors, we believe this to be a case for rehabilitative alimony.

■ Our Supreme Court, in discussing rehabilitative alimony, stated in *Self v. Self,* 861 S.W.2d 360 (Tenn.1993):

[T.C.A. § 36–5–101(d)(1) ] reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary.

861 S.W.2d at 361. The trial court should only grant alimony *in futuro* when rehabilita-

tion is not feasible. *Storey v. Storey,* 835 S.W.2d 593, 597 (Tenn.App.1992). Thus, there must be a threshold determination by the trial judge that, considering all relevant factors, rehabilitation of the economically disadvantaged spouse is not feasible. *Id.*

Although Wife is fifty-eight years old and does not have a high school diploma, we believe that she is a candidate for rehabilitation. Prior to, and during the early years of the marriage, Wife had a successful career handling claims for various insurance companies. Wife received promotions, raises, and was even honored as the employee of the month on occasion. Wife testified that she did not feel qualified for many jobs now, because she lacked computer skills. We believe that adult education courses in computer literacy could help her overcome this hurdle. There is also evidence that Wife suffers from a number of physical ailments. However, she testified that she works as a caterer twenty-five (25) hours per week. We believe, that with the proper training, Wife could increase her income significantly without greatly increasing the amount of hours that she works.

■ Further support for our conclusion that the trial judge should have considered an award of rehabilitative alimony is provided by Husband's lack of income. Although both parties live rather modestly, their incomes are simply too small to support two separate households in the manner that they have become accustomed to. Without including the alimony payment, Husband's net expenses exceed his net income by One Hundred Ninety–Four Dollars ($194). Thus, he must continually deplete his assets in order to meet his monthly obligations. These reserve assets will be needed soon for retirement. Need and the ability to pay are the most critical factors in awarding alimony. *Loyd,* 860 S.W.2d at 412; *Lancaster,* 671 S.W.2d 501 at 503; *Aleshire v. Aleshire,* 642 S.W.2d 729, 733 (Tenn.App.1981).

As stated previously, our review of the record indicates that Wife is a viable candidate for rehabilitation. Therefore, we find it appropriate to modify the award of alimony *in futuro* to an award of rehabilitative alimony. We affirm the monthly amount of Three Hundred Dollars ($300) and hold that payments in this amount shall continue for thirty-six (36) months, from July 22, 1994. This award shall not be contingent upon Wife's death or remarriage.

■ Wife's first contention on appeal is that the trial court erred in failing to award her attorney's fees. Attorney fee awards are treated as alimony. *Gilliam v. Gilliam,* 776 S.W.2d 81, 86 (Tenn.App.1988). In determining whether to award attorney's fees, the trial court should again consider the relevant factors in T.C.A. § 36–5–101(d)(1). *Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn.App.1992). Where the wife demonstrates that she is financially unable to afford counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney fees. *Id.; Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn.App.1980); *Palmer v. Palmer,* 562 S.W.2d 833, 839 (Tenn.App.1977). These awards are within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. *Lyon v. Lyon,* 765 S.W.2d 759, 762–63 (Tenn.App.1988).

■ In the case at bar, we cannot say that the evidence preponderates against the trial court's finding that Wife is not entitled to attorney's fees. Wife's assets, following the property distribution, exceed Husband's assets by Nine Thousand Dollars ($9,000). Furthermore, as discussed previously, neither Husband's separate property nor his salary provide him with the ability to pay these fees.

Wife has also requested that the Court award her attorney's fees in connection with this appeal. We have considered the entire record and the situation of the parties and like the trial court at the trial of the case, we feel that the respective parties should bear the expense of their own attorney's fees for this appeal.

The decree of the trial court is modified to eliminate the award of alimony *in futuro* and to award Wife rehabilitative alimony of Three Hundred Dollars ($300.00) per month for thirty-six (36) months from July 22, 1994. As modified, the decree is affirmed. Costs of

the appeal are assessed to the parties equally.

CANTRELL, J., concur.

TOMLIN, P.J. (W.S.), dissents by separate opinion.

TOMLIN, P.J., W.S., dissents.

I respectfully dissent in part from the majority opinion. More specifically, I disagree with the conclusion of my colleagues that the trial court's award to Wife of alimony in the amount of $300 per month should be reclassified as rehabilitative alimony rather than alimony in futuro.

The majority opinion correctly cites and relies upon caselaw that determines the nature of alimony that a trial court might award. In *Self v. Self,* 861 S.W.2d 360 (Tenn. 1993), the supreme court duly characterizes a codified principle regarding alimony:

[T.C.A. § 36-5-101(d)(1)] reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary.

861 S.W.2d at 361.

However, there is another legal principle that we, as an appellate court, must keep in mind when we contemplate reversing the judgment of the trial court in regard to the allowance of alimony. The amount of alimony to be awarded in a divorce suit is largely a matter left in the discretion of the trial judge in view of the particular circumstances and the appellate courts will not interfere except in the case of a manifest abuse of such discretion. *Hanover v. Hanover,* 775 S.W.2d 612, 617 (Tenn.App.1989).

At trial below, the parties waived oral argument. The trial judge made it known that she was aware of what each of the parties wanted—Wife requested alimony in futuro and Husband wanted no alimony awarded.

In reversing the trial court on this issue, the majority states that

we believe that she is a candidate for rehabilitation. Prior to, and during the early years of the marriage, Wife had a successful career handling claims for various insurance companies. Wife received promotions, raises, and was even honored as the employee of the month on occasion. Wife testified that she did not feel qualified for many jobs now, because she lacked computer skills. We believe that adult education courses in computer literacy could help her overcome this hurdle. There is also evidence that Wife suffers from a number of physical ailments. However, she testified that she works as a caterer twenty-five (25) hours per week. We believe, that with the proper training, Wife could increase her income significantly without greatly increasing the amount of hours that she works.

With this in mind, following is a summary of the education and work experience of Wife, who was born December 11, 1935 (she was 58 years of age at the time of the divorce). Wife completed the 10th grade in high school. She has no technical training, nor is she licensed or certified in any particular area. While still married to Husband, in 1989 she went to a Nashville high school in an attempt to obtain her GED, but failed the exam.

The vast majority of Wife's employment has been in clerical positions. She was employed by Fireman's Fund Insurance Company from 1963 to 1972, at which time the company closed the department in which she worked. She worked there as a policy typist and life insurance secretary, earning at or near minimum wage. From 1972 to 1975, Wife worked for an engineering firm, where she worked on the switchboard, did typing, and ordered supplies. Again, she was paid about minimum wage. She left this employment to get back into the insurance field. From 1975 to 1986 she worked for CIGNA, an insurance company. At CIGNA she did

clerical work, typing, ordered supplies, and paid medical claims. She lost her job at CIGNA when they closed down her department. Again, she was being paid about minimum wage at CIGNA. From 1987 through January 1990, Wife worked for Corroon & Black, an insurance company in Nashville. While there, she paid claims for the agency. She was terminated because of job reduction. She testified that at that time she was making about $13,000 or $14,000 per year. In none of the above positions was she ever disciplined or terminated for cause. Wife did not seek employment following this termination. She testified without contradiction that she was honoring her husband's request that she not work anymore because of her back problems and stress, and that he wanted her to be a homemaker and help take care of his elderly mother.

From the time Husband left the marital home in January 1992 until time of trial below, Wife testified that she had attempted to find full-time employment in the insurance industry. She failed the application test at one company and was advised by another for whom she had worked previously that no positions were available for someone with her qualifications. In addition, she has been working part-time doing catering for the Hee–Haw Group at Opryland and at the Vanderbilt Stadium Club, which entails about five hours a day, five days a week.

In essence, what we have before us is a woman not quite sixty years of age, with a tenth grade education, who spent twenty-three years in the labor market as a clerk-typist, earning minimum wage. There is no proof in this record that she has any particular skills other than typing. In fact, based upon her inability to pass the GED exam, she may have difficulty learning new information at this stage in her life.

The writer is also of the opinion that the Court may take judicial notice of the "sizing down" that Fortune 500 corporations and smaller companies alike are presently undergoing. The labor market has been reduced by several hundred thousands of workers in the last three years. It is unreasonable to expect that at her age and with her training and education—or really, lack of it—that even some type of basic training in computers would make her an appealing employee in today's market.

The writer also is of the opinion that the majority's reliance upon the lack of income of Husband is misplaced. While Husband is two years older than Wife, the record reflects that he had a steady job involving the repairing and selling of surveying equipment, and earned an average of at least $20,000 a year. He has a high school education, two years at Tennessee Tech, and computer and word processing skills. He testified that he is in good health, has successfully owned his own business and is trained in the use of survey equipment. The record also reflects that Husband voluntarily quit his job following the parties' separation in January 1992.

In my opinion, this record does not permit us to reach the conclusion that the action of the trial court in awarding alimony in futuro constituted a clear abuse of the court's discretion. As to all other issues before this court, I join with my colleagues and affirm the judgment of the trial court. I would affirm the award of alimony in futuro to Wife in the amount of $300 per month, and thus dissent from the action of the majority in changing the classification of the alimony award to rehabilitative alimony from alimony *in futuro*.