IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

**LINDA GAIL RAY,**

      Plaintiff-Appellee,

Vs.

**BILLY GENE RAY,**

      Defendant-Appellant.

FROM THE WAYNE COUNTY
CHANCERY COURT, No. 9400
THE HONORABLE JIM T.
HAMILTON, JUDGE
C.A. No. 01A01-9608-CH-00360
***AFFIRMED***

Paul Bates; Boston, Bates & Holt
of Lawrenceburg, For Appellee
Robert D. Massey of Pulaski,
For Appellant

**FILED**

May 9, 1997

Cecil W. Crowson
Appellate Court Clerk

_____

MEMORANDUM OPINION[1]

_____

***CRAWFORD, J.***

      This is a divorce case. Defendant, Billy Gene Ray (Husband), appeals from the judgment

of the trial court dividing the marital property and awarding alimony to the plaintiff, Linda Gail

Ray (Wife).

      On January 6, 1995, Wife filed a Complaint for Divorce alleging that Husband was guilty

of inappropriate marital conduct including adultery and mental and physical cruelty. The

complaint prayed for an absolute divorce, an equitable division of the marital property, alimony,

custody of the parties' minor child, child support payments, and attorney's fees. On February

6, 1995, Husband filed an Answer that denied that he was guilty of inappropriate marital conduct

but admitted that the parties had irreconcilable differences. He also filed a Counter-Complaint

for Divorce alleging that Wife was guilty of inappropriate marital conduct. In his counterclaim,

Husband sought an absolute divorce from Wife, custody of the parties' minor child, child support

payments, attorney's fees, and an equitable division of the marital assets.

      The case was tried before the chancery court, sitting without a jury, on September 6,

1995. The record does not contain a transcript of the evidence. Instead, the trial court adopted

a Statement of Evidence proposed by Wife, which we quote:

_____

[1]Rule 10 (Court of Appeals). <u>Memorandum Opinion</u>. -- (b) The Court, with the
concurrence of all judges participating in the case, may affirm, reverse or modify the actions
of the trial court by memorandum opinion when a formal opinion would have no precedential
value. When a case is decided by memorandum opinion it shall be designated
"MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for
any reason in a subsequent unrelated case.

The parties were married on December 23, 1972. They had both resided in Wayne County up to the time the divorce was granted. The couple had three children with two boys who are now adults and a daughter who was in high school at the time of the divorce. The plaintiff has been working as a waitress in Collinwood making approximately $5.00 per hour since the separation. She has no high school diploma nor any vocational training. During the time of the marriage, defendant admitted that his wife worked as a homemaker and that she cooked meals, kept clean clothes, kept a clean house and did a good job looking after the children. The defendant admitted to having numerous affairs while the parties were married. He also admitted that prior to the divorce he had been living with a 19 year old girl in the parties' home on the Tennessee River in Clifton, TN. Said paramour bore him a baby son on May 17, 1995. He admitted to beginning to live with her in June of 1994. He also admitted to having a sexual relationship with her as soon as they met. The house that the defendant and his paramour were living in at the time of the divorce was new, it had new furniture, new appliances including a dishwasher. He supported his paramour and provided her with an automobile to drive.

Plaintiff, on the other hand, lived in the parties' original marital residence which was in need of repairs. The stove did not work properly nor did the refrigerator. The hot water heater needed repair and she did not have a lawn mower to cut the yard. In addition, the washer and dryer at the marital residence were inoperable. The defendant never bought a dishwasher for the plaintiff during the entire time of their marriage. The parties' daughter was sleeping in a broken bed at the time of the divorce. The defendant had yet to repair that bed.

During the entire year and three months separation prior to the divorce, it was admitted that the paramour lived with the defendant, she had never worked and the defendant had supported her. At the time of the divorce, the defendant was 47 years old and his paramour was approximately 20 years old. He also admitted to putting crush-rock on the driveway at the new home after the separation. Defendant also admitted to having other affairs prior to his current one. As to his teenage daughter, who is an outstanding student at Collinwood High School, he had not seen or talked to her in over a year. He has not sent her any gifts, cards or made contact with her. During the time the children were in school, defendant admitted that he never went to school to check on any of the children's progress.

During the course of the marriage, defendant admitted that he had struck plaintiff on numerous occasions. Plaintiff has had her nose broken by the defendant.

Plaintiff recently suffered a severe cut and stab wound to her leg during a struggle with the defendant at the marital property on the river. After stabbing the plaintiff in the leg, he drove her to the hospital but stopped half-way to tell her that he didn't love her anymore and didn't have any use for her and that he wasn't going to live with her anymore.

The defendant is a self-employed contractor and has been in the business of doing telephone construction work under the name of Billy Ray Contracting. From 1990 until the date of the trial, he admitted that Billy Ray Contracting had had receipts well in excess of $1,000,000.00. In 1990, he received $224,732.15

from C & C Contracting alone. In 1991 he had gross receipts of $259, 606.92 which provided for a total profit of $52,083.56 after depreciation and interest payments. In 1992, he was paid $221,985.81 alone from Ryan Lopez. Defendant acknowledged that in 1993 he had over $77,000.00 worth of net income and claimed a total depreciation of assets in the amount of $57,589.00. In 1994, Billy Ray Contracting had gross receipts in the amount of $286,421.00. He claimed to have had expenses of $117,701.00 but never provided any documentation for those expenses despite agreeing to do so in his deposition. He also acknowledged the depreciation in 1994 of $51,728.00. He agreed that in 1994 he had a total income of $68,861.00. As to the depreciations that he claimed on all his income taxes, he agreed that said depreciations were not actual cash outlays but just losses he was allowed to take on his income taxes.

Plaintiff and defendant indicated that the net worth of the marital assets were worth well over $225,000.00 (Exhibit 8, December 1994, prepared and sworn to by Mr. Ray six months after the parties' separation). The parties owned three pieces of real estate which included the marital residence, a two acre tract in the Collinwood city limits upon which a garage was located and out of which the defendant's business operated and real estate in Clifton along the river consisting of the one acre tract upon which a new home has been built.

Defendant testified to the value of his business machinery and tools. He agreed that the values on Exhibit 6 were correct. He also testified that he borrowed $80,000.00 against the property and against equipment that was already paid off after separating from the plaintiff.

The trial court granted an absolute divorce to Wife and dismissed Husband's counterclaim. The trial court found that the parties' minimum net worth at the time of the separation was between $220,000.00 and $225,000.00 and that Husband owed less than $50,000.00 on a note secured by two bulldozers. The trial court divided the marital property and awarded Wife alimony in solido in the amount of $65,000.00, rehabilitative alimony in the amount of $250.00 per week for five years, and $6,000 in attorney's fees. The trial court also required Husband to obtain medical insurance for the benefit of Wife for five years and to name Wife as the irrevocable beneficiary on his existing life insurance policies for a period of five years. The trial court granted custody of the parties' only minor child to Wife with reasonable visitation to Husband and ordered Husband to pay $187.00 per week in child support. Finally, the trial court enjoined Husband from contacting, molesting, harassing, or interfering with Wife.

Husband appeals from this order of the trial court and presents two issues for review: 1) whether the trial court erred in its determination relating to the equitable division of marital assets and marital debt; and 2) whether the trial court erred in its award of alimony.

3

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

The weight, faith, and credit to be given to any witness's testimony lie in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Mays v. Brighton Bank*, 832 S.W.2d 347, 352 (Tenn. App. 1992).

In the first issue, Husband asserts that the trial court's judgment is void of reasoning, that the record lacks sufficient findings of the value of the marital assets by the trial court, and that the trial court erred in its division of the assets and debts. He also asserts that the trial court incorrectly took fault into consideration when dividing the assets. He argues that our review should be de novo without a presumption of correctness because the trial court's ruling lacks sufficient findings. We believe that the statement of the evidence reveals little dispute of the material facts and in this light, the trial court's judgment sufficiently outlines its findings so that a presumption of correctness applies.

The trial court awarded Wife the marital residence, the furniture and appliances in the residence , and the 1992 Chevrolet Silverado, as her share of the marital property with a value of approximately $72,000.00. The trial court awarded Husband the Clifton property, the business property, the furniture and appliances in the Clifton property, and the bulk of the personal property (which is mostly used in Husband's business) to Husband. Husband assumed all of the debt on the real estate including $24,500.00 from the original marital property, leaving a net award to Husband of approximately $87,462.45.

The trial court awarded Wife $65,000.00 as alimony *in solido* and specifically stated that the alimony in solido was awarded to Wife "in order to obtain an equitable division of the marital estate."

Trial courts have broad discretion in dividing the marital estate upon divorce. *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. App. 1995). In *Batson v. Batson*, 769 S.W.2d 849 (Tenn. App. 1988), this Court discussed the equitable division of marital property:

> Tenn.Code Ann. § 36-4-121(a) provides that marital

property should be divided equitably without regard to fault. It gives a trial court wide discretion in adjusting and adjudicating the parties' rights and interests in all jointly owned property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn.1983). Accordingly, a trial court's division of the marital estate is entitled to great weight on appeal, *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn.Ct.App. 1973), and should be presumed to be proper unless the evidence preponderates otherwise. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn.Ct.App. 1984); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn.Ct.App.1983).

A trial court's division of marital property is to be guided by the factors contained in Tenn.Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

*Batson*, 769 S.W.2d at 859.

It is not disputed that the value of the marital estate is deemed to be more than $225,000.00. From our review of the record, it appears that Wife was awarded approximately $137,000.00 of the assets.[2] There is no showing that the trial court incorrectly considered fault in the division of the marital assets. The evidence does not preponderate against the trial court's findings, and we find no error in the trial court's division of the marital assets.

In his second issue, Husband argues that the award of rehabilitative alimony and attorney's fees to Wife is improper in light of the division of the marital property and the award of alimony in solido. He claims that he is not in a position to pay the amount of the award. The trial court awarded Wife $250.00 per week as rehabilitative alimony for a period of five years. The trial court stated, "The court specifically finds that the plaintiff lacks a high school diploma, has no vocational skills and has a severely limited earning capacity. Conversely, the defendant has generated gross revenues approximating $400,000.00 annually in the recent past."

In his answers to interrogatories, Husband stated that his 1993 and 1994 incomes were both between $40,000.00 and $50,000.00. However, the Statement of Evidence states, "He agreed that in 1994 he had a total income of $68,861." In addition, Husband acknowledged in

---

[2] Wife was awarded the original marital home, the Chevrolet Silverado, and $65,000.00 in alimony in solido. In a personal financial statement that was considered by the trial court, Husband stated that the original marital home was worth $60,000.00 and that the Chevrolet Silverado was worth $12,000.00. The total of Wife's award is thus approximately $137,000.00 or approximately 61% of the marital estate.

5

the Statement of Evidence that his income was reduced on paper because of business deductions and that the deductions were not actual cash outlays.

The factors used to determine the proper amount of maintenance and support are found in T.C.A. § 36-5-101(d) (1996). As a general matter, the courts set the amount of a support award based on the needs of the innocent spouse and on the ability of the obligor spouse to pay. *Batson*, 769 S.W.2d at 861. If one spouse is economically disadvantaged compared to the other, the courts are generally inclined to provide some type of support.

The record indicates that the trial court considered the necessary factors, and the evidence does not preponderate against the findings of the trial court. The trial court correctly determined that Wife should be awarded rehabilitative alimony, and the record reveals that Husband has the ability to pay this award.

Finally, Husband argues that the award of attorney's fees is also improper in light of the other awards, and he claims that he does not have the ability to pay Wife's attorney's fees. The trial court ordered Husband to pay $6,000.00 for Wife's attorney's fees. The trial court said, "In awarding said attorney fee, the court notes that the defendant, Billy Gene Ray, contested the custody of the parties' minor daughter in his answer and counterclaim although the proof indicated that he had no contact with her since the parties' separation."

Attorney fee awards are treated as alimony. *Kincaid*, 912 S.W.2d at 144. In determining whether to award attorney's fees, the trial court should again consider the relevant factors in T.C.A. § 36-5-101(d)(1). *Id*. Where the wife demonstrates that she is financially unable to afford counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney fees. *Id*. These awards are within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. *Id*.

In the case at bar, we cannot say that the evidence preponderates against the award of attorney's fees to Wife, and we believe that Husband has the ability to pay the award.

Accordingly, the judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed against the appellant.

6

                                         **W. FRANK CRAWFORD,**
                                         **PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

7