# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

———————————————————————

CINDA KAY CANTRELL,          )

)

    Plaintiff/ Appellant,       )     Davidson Circuit No. 92D-1968

)

v.                            )

)     Appeal No. 01A01-9603-CV-00091

JAMES CLARENCE CANTRELL,   )

)

    Defendant/Appellee,    )

)

MARIE LOYA,             )

)

    Intervenor/Appellee.    )

| FILED |
| :---: |
| **June 27, 1997** |
| **Cecil V. Crowson** |
| **Appellate Court Clerk** |

## APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

## THE HONORABLE MARIETTA SHIPLEY, JUDGE

For the Plaintiff/Appellant:       For the Defendant/Appellee:

Louise R. Fontecchio           Michael K. Radford
Nashville, Tennessee           Nashville, Tennessee

For the Intervenor/Appellee:

John Aaron Holt
Nashville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

# OPINION

This is a divorce case involving the division of marital property. Among other things, the trial court found that $30,000 from the husband's mother was a loan to the husband and wife, and the wife appeals. We affirm.

Prior to their present marriage, Cinda Kay Cantrell ("Wife") and James Clarence Cantrell ("Husband") had been married to each other and divorced. They remarried in 1982, and Wife filed for divorce in 1992. At the time the divorce was filed, Husband and Wife owned two residential properties in Nashville, Tennessee, the first at 675 Westboro Drive ("the Westboro residence") and the second at 7419 Bridle Drive ("the Bridle residence"). Husband and Wife had been living at the Bridle residence. Pending the final divorce decree, Wife was permitted to move into the Westboro residence, while Husband remained at the Bridle residence. In 1993, Husband's mother, Marie Loya ("Loya"), intervened, alleging that she had loaned Husband and Wife $36,000, which had not been repaid. Loya asserted that she loaned Husband and Wife the money to help them purchase the Bridle residence, and that they verbally agreed to repay her from the proceeds from the sale of the Westboro residence.

A hearing was held to determine, among other things, the validity of Loya's claim. Husband testified that he and Wife borrowed money from his mother, Loya, in order to help purchase the Bridle residence. The money came from some certificates of deposit and a checking account, all of which were in both Loya's and Husband's names. Husband testified that he and Wife had an understanding with Loya, prior to their use of Loya's money, that they would pay her back with the proceeds of their planned sale of the Westboro residence. Husband denied that Loya's money was a gift. Husband's documents indicated that he and Wife received a little over $33,000 from Loya. Husband also admitted that during this period Wife had inherited money from her family, some of which was used to renovate the Westboro residence.

Loya's testimony was fairly consistent with Husband's. She testified that all her savings had been placed in a joint account with Husband, her only child, to ensure that Husband would get the money in the event of her death. When Husband and Wife decided to acquire the Bridle residence,

Loya permitted them to use her funds in the purchase. Loya asserted that the money was a loan and that she expected to be repaid, without interest, when Husband and Wife sold the Westboro residence. She denied that it was a gift. Loya testified that the amount of the loan was $36,000, but she had no documentation to that effect.

In her testimony, Wife admitted that funds belonging to Loya had been used as a down payment for the Bridle residence. Wife also admitted that she understood that the money was to be repaid once they sold the Westboro residence. She testified that she did not think of the money as a gift but instead understood that it was only a loan. Wife stated, however, that as time went on and Husband continued to refuse to put the Westboro residence on the market, she began to think that the money had not been a loan after all. Wife testified that she believed that the money received from Loya was used for the down payment and the down payment had been $30,000.

Wife also testified that, during this period, she inherited approximately $30,000 from her family. She stated *inter alia* that she spent approximately $7,000 on items at the Westboro residence, a small building and a pool, and that she spent approximately $15,000 of it in renovating the Bridle residence.

Two other witnesses testified at the hearing. Buford Cantrell, Husband's uncle, testified that Husband and Wife, in his presence, discussed the loan from Loya and the plans to repay her from the proceeds of the sale of the Westboro residence. George Bartlett testified that more than once he had heard Wife describe the money from Loya as a loan.

Wife raises several issues on appeal. First, she asserts that Loya failed to carry her burden of proof as to whether the money used by Husband and Wife was a loan and, if it was a loan, the amount of the loan. Second, she claims that the division of the parties' marital property was inequitable, in that she was ordered to pay half the debt to Loya, that she was not given credit in the division of property for the inheritance monies she spent on joint property, and that she was ordered to sell the Westboro residence to pay the debt to Loya if the debt could not otherwise be paid. Third, Wife complains that several issues in the case, such as spousal support, attorney's fees and the division of Husband's pension benefits, never received a full and fair hearing. Finally, Wife seeks attorney's fees for this appeal.

2

Husband maintains that Wife admitted in her testimony that the money received from Loya was a loan, intended to be repaid from the proceeds from the sale of the Westboro residence. Husband also contends that the remaining issues between the parties were resolved by agreement, and that Wife cannot appeal from a consent decree.

The Statement of Evidence regarding the January 6, 1994 hearing, approved by the trial court, describes the testimony and evidence concerning the monies from Loya, and states:

> This statement of the evidence is presented for the purposes of evidence presented on the issues raised in the Intervening Petition of Marie Loya; the remaining issues raised in the Complaint and Counter-Complaint for Divorce were resolved by the parties and were announced in open court.

On appeal, Wife disputes that the parties reached an agreement regarding such "remaining issues."

Our standard of review in this case is *de novo* on the record, with a presumption of the correctness of the trial court's findings of fact. The decision of the trial court will be affirmed unless the evidence preponderates against its findings of fact or the trial court committed an error of law. Tenn. R. App. P. 13(d). Further, a trial court has broad discretion in dividing a marital estate upon a couple's divorce. *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. App. 1995). Its division of the marital estate will be presumed correct unless the evidence preponderates otherwise. *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. App. 1988).

Wife first asserts that Loya failed to carry her burden of proof that the money she let Husband and Wife use in purchasing the Bridle residence was a loan rather than a gift. Loya and Husband both testified that the money was a loan to be repaid upon the sale of the Westboro residence. Two other witnesses testified that they had heard Wife speak of the money as a loan. Wife admitted that, at the time of the loan, it was her understanding that the money was a loan, to be repaid upon the sale of the Westboro residence, although she stated that this understanding later changed. Great weight is accorded the trial court on issues involving the credibility of witnesses. *Lindsey v. Lindsey*, 930 S.W.2d 553, 556 (Tenn. App. 1996). There was ample evidence to support the trial court's finding that the money from Loya was a loan rather than a gift.

Wife also asserts that Loya failed to present sufficient evidence on the amount of the loan. Loya testified that she lent Husband and Wife $36,000, and Husband produced records purporting to show that at least $33,000 of Loya's funds had been used. Wife testified that Loya's money had been used as a down payment on the Bridle residence and that the down payment had been $30,000.

3

Wife's attorney noted that, at the time of the down payment, Husband had also cashed some CD's owned jointly with Wife, raising a question as to whether some of this money had been used for the down payment. After reviewing the testimony and the evidence, however, the evidence does not preponderate against the trial court's conclusion that the loan was for at least $30,000. The trial court's decision regarding the amount of the loan is affirmed.

Next, Wife argues that the division of the marital property was inequitable in that she was ordered to pay half the debt to Loya, that she was not given credit in the division of property for the inheritance monies she spent on joint property, and that she was ordered to sell the Westboro residence to pay the debt to Loya if it could not otherwise be paid. Wife also contends that she was denied the opportunity for a full hearing on several issues, including the division of Husband's pension benefits, spousal support and attorney's fees.

The Statement of Evidence on the January 6, 1994 hearing, approved by the trial court, states clearly that evidence was presented on the issue regarding the money from Loya and that "the remaining issues. . . were resolved by the parties and were announced in open court." The record indicates that, at the January 6, 1994 hearing, the court ruled on the Loya debt and the parties' attorneys indicated agreement on the issues of child custody, child support, and the division of personal property. At that point, the trial court declared Husband and Wife to be tenants in common as to both pieces of real property. The trial court found that Wife had not produced sufficient evidence that her separate inheritance money was spent on the jointly held real property to warrant an adjustment in the property division, but gave Wife the opportunity to submit further evidence on her inheritance claim. Wife's attorney indicated she was not seeking spousal support so long as Wife was permitted to remain in the Westboro residence, but the trial court required Husband to pay $100 per month in alimony for Wife's insurance.

Subsequently, Wife remarried and the trial court ordered Wife to repay the alimony that Husband paid after her remarriage. The trial court also awarded Husband and Wife each the residence in which they were living, and gave Husband a judgment against Wife for half the amount by which the equity in the Westboro residence exceeded the equity in the Bridle residence.

4

Subsequently, Wife retained new counsel and filed a motion to alter or amend the judgment, arguing *inter alia* that Wife did not receive appropriate credit in the division of property for her inheritance monies used on the jointly held real property, that Wife did not receive a portion of Husband's pension plan and was denied the opportunity to submit proof on that issue, and that the parties owned cemetery lots that were never divided by the trial court. The trial court denied the motion to alter or amend, except that it permitted Wife to submit any additional evidence on her claim for credit on her inheritance monies. Wife later submitted documentation on the inheritance monies, but the trial court found it insufficient to warrant altering its earlier judgment.

From our review of the record, the evidence does not preponderate against the trial court's decision to allocate half of the Loya debt to Wife. The evidence indicated that the debt was incurred for the parties' mutual benefit and that both parties are capable of repayment. *See Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. App. 1989). Consequently, the trial court is affirmed on this issue.

Moreover, the record supports the trial court's determination that Wife did not produce sufficient evidence on how her inheritance monies were spent to warrant giving her credit for such monies in the division of the real property. The record does not reflect any other evidence indicating that an equal division of the real property would be inequitable. Accordingly, the trial court's decision to divide the real property equally between Husband and Wife is affirmed.

Although Wife argues that it was inequitable to award Loya a judgment against Wife for half of the amount of the loan and to require the sale of the Westboro residence if the debt were not otherwise paid, the record does not include sufficient evidence to conclude that the trial court's decision was in error. The trial court is affirmed on this issue.

Wife contends that she was denied a full and fair hearing on the issues of spousal support, attorney's fees and the division of Husband's pension benefits. However, Wife does not point to any portion of the record in which she sought to submit evidence on these issues, prior to the motion to alter or amend the judgment. A motion to alter or amend judgment cannot be used as a vehicle to raise arguments which could have been raised prior to the issuance of judgment. *See Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993); *cert. denied*, 114 S. Ct. 926, 127, L.Ed. 2d 218 (1994). The decision of the trial court is affirmed on these issues as well.

The decision of the trial court is affirmed. Costs are assessed against Appellant, for which

5

execution may issue if necessary.

                **HOLLY KIRBY LILLARD, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P. J., W.S.**

**ALAN E. HIGHERS, J.**