IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 2001 Session


# JAMES THOMAS FRAYSIER v.
# KAREN KAY SINGLETON FRAYSIER


**Appeal from the Chancery Court for Washington County**
**No. 7142     Jean A. Stanley, Judge**

**FILED FEBRUARY 27, 2001**

**No. E2000-02485-COA-R3-CV**

---

James Thomas Fraysier ("Husband") filed a complaint seeking a divorce from Karen Kay Singleton Fraysier ("Wife") on the grounds of inappropriate marital conduct or, in the alternative, irreconcilable differences. Wife filed an answer and counterclaim seeking a divorce on the same grounds. The parties agreed upon the distribution of the marital assets, which was approved by the Trial Court. The two issues to be decided at trial were who should be granted the divorce and whether Wife was entitled to alimony. The Trial Court determined that Husband was entitled to a divorce on the basis of inappropriate marital conduct and that Wife was entitled to rehabilitative alimony in the amount of $600.00 per month for a period of 48 months or until further order of the court. Both parties appeal the Trial Court's determination with regard to alimony. We affirm.

**Tenn. R. App. P. 3 Appeal As Of Right;**
**Judgment of the Chancery Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Nat H. Thomas, Kingsport, Tennessee, for the Appellant, James Thomas Fraysier.

R. Wayne Culbertson, Kingsport, Tennessee, for the Appellee, Karen Kay Singleton Fraysier.

## OPINION

## Background

After twenty-eight years of marriage, on October 15, 1999, James Thomas Fraysier ("Husband") filed a complaint seeking a divorce on the basis of inappropriate marital conduct or, in the alternative, irreconcilable differences. Karen Kay Singleton Fraysier ("Wife") filed an answer and counterclaim seeking a divorce on the same grounds.

At the time of trial, Wife was forty-nine years old. She had been a certified licensed practical nurse and also had held a certification in "x-ray." She worked as a nurse for twenty-seven years. At her last nursing job, she earned approximately $9.50 per hour. While practicing as a nurse, Wife became addicted to drugs. She admitted taking drugs and syringes from work and injecting the drugs while at home. She would then return the used syringes to work in an attempt to cover up her actions. She created fictitious patient names to cover up the disappearance of the drugs. Wife took a leave of absence from work in 1999 because her employer was about to discover the missing drugs. When she returned from the leave of absence, she again started stealing drugs and syringes. This time, her employer discovered the missing drugs. Wife eventually plead guilty to several counts of forgery and was placed on two years of probation. She also surrendered her certification as a licensed practical nurse and x-ray technician. These actions of Wife formed the basis of Husband's request for, and the Trial Court's granting of, a divorce on the grounds of inappropriate marital conduct.

Wife is currently employed as a greeter at Wal-Mart and is earning approximately $5.88 per hour. While she has completed a drug rehabilitation program, Wife testified that she did not want to return to the nursing field after completing probation because of the resulting temptation that may arise from being around drugs. She admitted that this was a voluntary reduction in her wages and that she could earn as much as $10.00 per hour if she returned to the nursing field in the future. She has made no attempt to secure a higher paying job since becoming employed at Wal-Mart and has indicated her intent to stay at that job. Wife testified that she has a bulging disk in her back for which she is treated by an orthopedist, but this does not prevent her from working. Otherwise, her health is fair. Her gross monthly earnings from her job at Wal-Mart are $940.80.

Husband is fifty-one years old and is employed at Tennessee Eastman Company as a machine operator earning approximately $18.00 per hour. He has been employed at Tennessee Eastman Company for twenty-six years. He has a high school education. Husband's gross earnings for 1999 were $43,103.90. His gross monthly earnings at the time of trial were $3,745.28.

The parties reached an agreement on the division of the marital property, which was approved by the Trial Court. The marital property was divided equally, with each party receiving slightly more than $240,000 in assets. Husband received $15,085.69 from the savings and checking accounts, and Wife received $21,458.81. Husband received $197,905.95 from his retirement and stock ownership plans at Tennessee Eastman Company, with Wife receiving $92,000.00 from these

same plans. Wife received the $5,354.33 in her retirement plan. The marital residence, valued at $115,000.00, was awarded to Wife. Wife is also responsible for the remaining seven years of mortgage payments of $262.13 per month. Wife and the parties' two grown sons live at the marital residence. One of her sons has been paying the electric bill in exchange for living at the house. There are no minor children.

The first issue decided by the Trial Court was which party was entitled to a divorce. The Trial Court concluded that because of Wife's drug addiction and criminal activity, Husband was entitled to a divorce. Wife's counterclaim for divorce was dismissed. Neither party appeals that determination.

The second issue decided by the Trial Court was whether Wife was entitled to alimony and, if so, the amount and whether she should be awarded rehabilitative alimony or alimony *in futuro*. Both parties filed financial statements with the Trial Court setting forth their monthly income and expenses. Wife listed monthly expenses of $1,909.13. Of that amount, she listed a $100.00 monthly expense for upkeep on her house, but admitted that since the separation there has been only one such expense totaling $69.00. She also had an "entertainment" expense of $50.00 per month and admitted that one $25.00 item (car tags) was a yearly expense and not a monthly expense. She also included $50.00 per month as "Christmas Extra Expense" to buy Christmas presents. Wife had a monthly expense of $70.00 toward court costs associated with the criminal action. Wife's net income per month was listed as $750.00.

Husband's financial statement showed a net monthly income of $2,976.71. His monthly expenses are $1,820.87 after considering items which Wife will be responsible for paying pursuant to the terms of the property settlement, such as the mortgage on the home.

After reviewing Wife's statement of income and expenses, the Trial Court concluded that Wife could live on "probably half" of what was shown in the statement. To do this, she would need to pay off some of the debt such as the remaining mortgage and automobile payment and adjust her lifestyle to conform to her lower paying job at Wal-Mart. Along this line, the Trial Court stated:

> The problem is Mrs. Fraysier thinks she's rehabilitated to where she wants to be, she likes Wal-Mart, she wants to work at the Wal-Mart. If she's happy and content and that's going to keep her happy and keep her off drugs, stay at the Wal-Mart, I've got no problem with that. Now on the other hand, I'm not going to make Mr. Fraysier pay the difference in her lifestyle for the rest of her life . . . .

The Trial Court concluded that Wife was not entitled to alimony *in futuro*, but was entitled to rehabilitative alimony in the amount of $600.00 per month for 48 months.

## Discussion

On Appeal, Husband claims that Wife is not entitled to any alimony. Wife claims that she should have been awarded alimony *in futuro* as opposed to rehabilitative alimony.

Our review is *de novo* with a presumption of correctness of the factual findings of the trial court, unless a preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard*, 986 S.W.2d at 234.

Determinations concerning the amount and duration of alimony are factually driven and require a balancing of the various factors contained in Tenn. Code Ann. § 36-5-101(d)(1). *Herrera v. Herrera*, 944 S.W.2d 379, 387-88 (Tenn. Ct. App. 1996). These factors include:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the martial property as defined in § 36-4-121;

(I)  The standard of living of the parties established during the marriage;

(J)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K)  The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The statute also provides that it is the intent of the general assembly that an economically disadvantaged spouse be rehabilitated whenever possible with the payment of temporary support and maintenance.  When this is not feasible after considering all relevant factors, then the court may award support and maintenance on a long term basis, or alimony *in futuro*.  Tenn. Code Ann. § 36-5-101(d)(1).  The preference for rehabilitative alimony over alimony *in futuro* was set forth by our Supreme Court in *Self v. Self*, 861 S.W.2d 360, 361 (Tenn. 1993):

> [Tenn. Code Ann. § 36-5-101(d)(1)] reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary.

It is clear from the opinion in *Self* that a trial court should grant alimony *in futuro* only when rehabilitation is not feasible and such long term support is necessary.  *See also Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992).  The trial court must, therefore, make a threshold determination that, considering all relevant factors, rehabilitation of the economically disadvantaged spouse is not feasible.  *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

After review of the record, we find no error in the Trial Court's awarding of rehabilitative alimony in the amount of $600.00 per month for a period of 48 months.  We agree with the Trial Court's conclusion that Wife is in need of rehabilitative alimony and that this is not an appropriate case for alimony *in futuro*.  The Trial Court also correctly noted that Wife may need to adjust her lifestyle.  While Wife is to be commended on successfully completing a drug rehabilitation program and remaining drug-free, Husband should not have to be responsible forever for the difference in lifestyle that will result from the lower wages Wife will earn at Wal-Mart.  The rehabilitative alimony awarded to Wife will allow her to pay off the mortgage on the house.  She also will be able to pay off the remaining debt on her automobile.  The combined total of the amount

owed on the house and automobile awarded to Wife was just under $9,000.00 at the time of trial. The monthly payments for these two items are $262.13 and 126.00, respectively. The alimony awarded totals $28,800.00 over a four year period. This is more than sufficient to eliminate these two debts entirely and to allow Wife to make payments on other monthly expenses as well during the 48 month period. This alimony award also provides Wife four years in which to rehabilitate further her life, including her work life. How Wife uses these four years is her choice and her responsibility.

Naturally, two persons living separately incur more expenses than two persons living together. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle once the proceedings are concluded." *Kinard*, 986 S.W.2d at 234. When the amount of rehabilitative alimony awarded is considered along with all the factors contained in Tenn. Code Ann. § 36-5-101(d)(1), such as the division of the marital property and the relative fault of the parties, it is clear that the Trial Court properly weighed all relevant factors in reaching its conclusion. The decision of the Trial Court is affirmed.

### Conclusion

The judgment of the Trial Court is affirmed, and this matter is remanded for further proceedings as may be required, if any, consistent with this Opinion, and for the collection of costs below. Costs of this appeal are taxed one-half to James Thomas Fraysier and one-half to Karen Kay Singleton Fraysier and their sureties.

_____
D. MICHAEL SWINEY, JUDGE