# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
On Brief March 10, 2005 Session

## EARL E. RIVERS v. KATHLEEN J. RIVERS

**A Direct Appeal from the Chancery Court for Hardeman County**
**No. 14959     The Honorable Dewey C. Whitenton, Chancellor**

_____

**No. W2004-02149-COA-R3-CV - Filed April 8, 2005**

_____

This is an appeal from a final decree of divorce involving issues of alimony in futuro and an award of attorney fees. Husband appeals. We reverse in part, affirm in part, and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

William G. Hatton of Bolivar for Appellant, Earl E. Rivers

Karen T. Fleet of Bolivar for Appellee, Kathleen J. Rivers

### OPINION

On March 14, 2004, Earl E. Rivers ("Plaintiff," or "Appellant") filed a "Complaint for Divorce" against Kathleen J. Rivers ("Defendant," or "Appellee").[1] On April 2, 2004, Ms. Rivers filed an "Answer and Counter-Complaint for Divorce". In her Counter-Complaint, Ms. Rivers indicates:

> That the Defendant has been diagnosed with uterine cancer, which has metastasized to her lungs and lymph nodes, and is presently undergoing chemotherapy. That she is in need of alimony in futuro, as she will no longer be able to maintain her employment on a

_____

[1] We note that a "Consent Amendment to Final Decree of Divorce" was entered on November 10, 2004, which restored Ms. Rivers' former name of "Howser". However, for purposes of this appeal and to avoid confusion, we will refer to the Appellee as Ms. Rivers.

permanent basis. That the Plaintiff is capable of paying same, as he has income in excess of <u>$2,500.00</u> per month....

Based upon these assertions, Ms. Rivers' Counter-Complaint prays that Mr. Rivers be ordered to pay $1,000.00 per month in alimony in futuro. On June 16, 2004, Mr. Rivers filed an "Answer to Counter-Complaint for Divorce," which generally denies the assertions made by Ms. Rivers in her Counter-Complaint.

The matter was heard by a Mediator on or around June 21, 2004; however, the case did not settle. On July 6, 2004, Mr. Rivers filed an "Affidavit of Income and Expenses," which lists his net monthly income at $3,320.00 and his net monthly expenses at $3,290.00. The matter proceeded to trial on July 6, 2004. The trial court's "Statement of the Evidence," filed on December 20, 2004, reads, in relevant part, as follows:

> In this contested divorce case, the plaintiff-appellant, Earl Rivers, testified, that he was 63 years of age and that he was retired from the U.S. Navy. His total monthly retirement income, by way of pensions and social security payments was $2,600.00 per month. He had been married to the defendant-appellee since 1977. They were purchasing a home in Middleton, Hardeman County, Tennessee, and owed money on the home, as well as several other debts. He also testified that he had several accidental death insurance policies on the life of the defendant-appellee, and one permanent life insurance policy. He denied having an adulterous affair.

> Mr. Rivers stated that he had voluntarily retired from Western Mental Health Institute with a State of Tennessee retirement in October 2002. At the time of the divorce hearing, Mr. Rivers filed a financial affidavit reflecting monthly income of $3,320.00....

> \*                               \*                               \*

> The defendant-appellee, Kathleen Rivers, testified that she was 55 years of age and was in poor health. A letter from her physician was introduced, by stipulation of the parties, that indicated she was suffering from cancer of the uterus and that her prognosis was poor, with a life expectancy of 10 to 18 months as a May 2004. She testified that she was unable to work due to her illness, although she had been employed as a Certified Nursing Assistant until the filing of this divorce action by the plaintiff appellant. She testified that the plaintiff was engaged in an adulterous affair. She also confirmed Mr. Rivers' current income and debts and obligations of the parties.

\*                            \*                            \*

> Ms. Rivers testified that her uterine cancer had metastasized to her lungs, brain and lymph system. She was undergoing chemotherapy, had lost her hair and appeared to be very weak. The divorce complaint was filed on March 15, 2004. Ms. Rivers had been employed until April 30, 2004, as a Certified Nursing Assistant. She testified that the stress of the cancer, her husband's adultery and the divorce had affected her health, and that she was no longer able to work.

On August 3, 2004, the trial court entered its Order. The Order grants the parties an absolute divorce on the grounds of inappropriate marital conduct, divides the marital property, and further provides:

> ...[T]he marital residence...shall be held by the parties as tenants in common. That the Defendant is awarded immediate possession of the marital residence as alimony until October 1, 2005 or until her death. That the Plaintiff will pay the real estate taxes, hazard insurance, the house note of $660.97 per month, and the siding note of $283.00 per month as alimony until October 1, 2005 or until Defendant's death, whichever is first....

\*                            \*                            \*

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED by this Honorable Court that the Defendant is awarded $800.00 per month plus Clerk and Master's fee as alimony in futuro beginning August 1, 2004, to be paid until Defendant's death or remarriage. That said alimony is subject to adjustment upon Defendant's receipt of disability.

In addition, Mr. Rivers was ordered to pay Ms. Rivers' attorney fees in the amount of $2,500.00. Mr. Rivers filed his "Notice of Appeal" on August 31, 2004. By his "Notice of Appeal," Mr. Rivers appeals only "from the judgment and final order entered in this action on the 3rd day of August, 2004."

On September 30, 2004, Ms. Rivers filed a "Petition for Contempt" against Mr. Rivers for Mr. Rivers' alleged failure to pay the court-ordered "pro rata share of his Naval Pension," and to pay "Alimony in futuro." The Petition for Contempt was heard by the trial court on November 10, 2004. An Order on the Petition for Contempt was entered on November 16, 2004. Although, the November 16, 2004 Order is premised on the "Petition for Contempt," the Order appears to modify the August 3, 2004 Order in that it orders Mr. Rivers to pay $2,300.00 per month to Ms. Rivers and

specifically reserves the issue of arrearage. However, as noted above, Mr. Rivers' "Notice of Appeal" addresses only the August 3, 2004 Order.

Mr. Rivers raises two issues for review on his appeal of the August 3, 2004 Order, as stated in his brief:

> 1. Whether the trial court erred in it[s] awarding of alimony in futuro.
>
> 2. Whether the trial court erred in awarding $2,500.00 to Appellee in attorney fees.

We first note that, since this case was tried by a court sitting without a jury, we review the case de novo upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

## Alimony

Because the amount, if any, and type of alimony to be awarded is within the sound discretion of the trial court in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App.1997). T.C.A. § 36-5-101 provides a list of factors that must be considered by a court in determining whether to award rehabilitative support and maintenance to an economically disadvantaged spouse. Although no single factor is necessarily controlling, consideration of "all relevant factors" is mandatory. Under T.C.A. § 36-5-101(d)(1)(E) (Supp. 2004), relevant factors to be considered in deciding whether to award alimony include:

> (I) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
> (ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (iii) The duration of the marriage;
> (iv) The age and mental condition of each party;
> (v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to the marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The most critical factors in awarding alimony are need and the ability to pay. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App.1995) (citing *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App.1993); *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App.1984); *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn. Ct. App.1981)).

From the "Statement of the Evidence" in this case, it is apparent that, due to her current health and grave diagnosis, Ms. Rivers is indeed in need of alimony in futuro. The gravamen of this issue, however, is whether and to what extent Mr. Rivers has the ability to pay that alimony. There is some confusion in this record as to the exact amount of Mr. Rivers' monthly income. The record indicates that his "total monthly retirement income, by way of pensions and social security payments [is] $2,600.00 per month." However, the financial affidavit filed by Mr. Rivers prior to the hearing in this case indicates that his monthly income is $3,320.00. By the August 3, 2004 Order, Mr. Rivers was ordered to pay the house note of $660.97 per month, the siding payment of $283.00, plus hazard insurance and property taxes on the marital residence as alimony in futuro.[2] In addition to those payments, he was also ordered to pay an additional $800.00 per month in alimony in futuro for a total payment of more than $1,743.97 (including the taxes and insurance) per month. When the particular facts of this case are viewed in light of the factors outlined in T.C.A. § 36-5-101(d)(1)(E), *see supra*, there is no question that Ms. Rivers has a need for alimony in futuro; however, from the evidence before us, it appears to this Court that the amount of alimony awarded in the August 3, 2004 Order is somewhat excessive given Mr. Rivers income and ability to pay.

In addition, the trial court's entry of the second Order on November 16, 2004 raises some discrepancy as to exactly what amount of alimony is ordered in this case. In that second Order, which is not before us for review but which gives rise to some confusion on the issue of alimony, it appears that the trial court ordered Mr. Rivers to basically turn over all but a nominal amount of his monthly income to Ms. Rivers. Given the subsequent actions of the trial court in entering this November 16, 2004 Order and in weighing the statutory factors in light of the unusual facts of this

---

[2] There is no evidence in record reflecting the amounts of the insurance and property taxes.

-5-

case, we find it necessary to remand the case for reconsideration on the issue of alimony.**Attorney Fees**

It is well settled that an award of attorney fees constitutes alimony in solido. *See Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App.1996). The decision whether to award attorneys' fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App.1995); *see also* Rule 13(d) Tenn. R. APP. P. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d), *see supra*. A spouse with adequate property and income is not entitled to an award of alimony to pay attorneys' fees and expenses. *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App.1997); *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App.1984). These awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App.1992), or would be required to deplete his or her resources in order to pay these expenses. *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App 1980). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App.1980); *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); *Ligon v. Ligon*, 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

Here, Mr. Rivers has the means to pay Ms. Rivers' attorney fees; and due to her illness, Ms. Rivers continues to have need of assistance in paying her attorney's fees in order to avoid a depletion of assets that the trial court awarded. Consequently, we hold that the trial court did not err in awarding Ms. Rivers attorney fees in this case.

Based upon the foregoing, we reverse the August 3, 2004 Order of the trial court to the extent that it makes an award of alimony in futuro. We remand for determination of the alimony award consistent with this Opinion. The Order is affirmed in all other respects. Costs of this appeal are assessed one-half to the Appellant, Earl E. Rivers and his surety and one-half to the Appellee, Kathleen J. Rivers.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.