# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 2, 2002 Session

## MELODY JO KNOWLES v. JACK REED KNOWLES

**A Direct Appeal from the Chancery Court for Lewis County**
**No. 4182     The Honorable Russ Heldman, Chancellor**

---

### No. M2001-01282-COA-R3-CV - Filed April 19, 2002

---

Wife sued for divorce on grounds of inappropriate marital conduct and adultery. The trial court granted Wife an absolute divorce, awarded her alimony *in futuro* and attorney fees, and ordered Husband to pay Wife's health insurance costs. Husband appeals. We reverse in part and affirm in part.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

David L. Scott, Murfreesboro, For Appellant, Jack Reed Knowles

Delilah A. Speed, Columbia, For Appellee, Melody Jo Knowles

### OPINION

Plaintiff, Melody Jo Knowles ("Wife"), and Defendant, Jack Reed Knowles ("Husband"), were married in Michigan on October 27, 1984. The parties later relocated to Tennessee, and on August 29, 2000, Wife filed for absolute divorce from Husband on grounds of inappropriate marital conduct and adultery. There were no children born of the marriage, but Wife has an adult son, whom Husband adopted during the parties' marriage.

After a nonjury trial, the trial court filed its final decree on April 23, 2001 which, *inter alia,* granted Wife an absolute divorce on the grounds of adultery, adopted Husband's proposed division of property, and divided the parties' marital debt. The marital debt assessed to Wife included $4,000.00 for a Visa account. The Order further provides:

It is further ordered that Defendant shall pay to Plaintiff the sum of Four Thousand and no/100 dollars ($4,000.00) for her Visa account, for which let execution issue if necessary.

It is further ORDERED that the Defendant shall pay to Plaintiff the sum of One Thousand Five Hundred and no/100 Dollars ($1,500.00) each month as Alimony in Futuro. He shall pay this alimony until the Plaintiff's death or remarriage. The alimony shall be deducted from his paycheck by his employer, Saturn, as has been previously ordered. Saturn is instructed to immediately begin making payments of Seven Hundred Fifty and no/100 Dollars ($750.00) on the first and fifteenth of each month.

It is further ORDERED that the Defendant shall pay the health insurance for the Plaintiff for a total period of two years. For the next thirty-six months from the date of this decree, the Defendant shall provide insurance through COBRA, unless he can obtain insurance at a more reasonable rate through a private insurance carrier that is equivalent to the insurance provided through COBRA. Defendant is ordered to immediately contact his benefits department at Saturn to make sure the COBRA can go into effect as ordered. The Plaintiff shall be responsible for all medical expenses not covered by insurance.

It is further ORDERED that the Defendant shall be responsible for all medical expenses incurred by the Plaintiff through the date of the final hearing of the divorce not covered by insurance. This does not include optical coverage.

It is further ORDERED that the Defendant will pay the attorney's fees for the Plaintiff's attorney in the amount of One Thousand Seven Hundred and no/100 Dollars ($1,700.00).

It is further ORDERED that the Defendant will pay the costs of this cause for which let execution issue, if necessary.

On April 23, 2001, the Chancellor entered a Supplemental Order which provides as follows:

In supplement to the final decree, the Court finds that Husband's adultery with a married woman caused the demise of the marriage of the Knowles. His marital fault is properly to be considered as a factor in awarding alimony, in addition to all other applicable statutory factors. The Court further finds that Mrs.

Knowles cannot be rehabilitated when viewed in the context of the standard of living established during the marriage. Mrs. Knowles suffers from a relative economic disadvantage in relation to Mr. Knowles. Her rehabilitation is not feasible. The Court accepts the statements of the attorney for Mrs. Knowles in open court as a basis for an award of attorney's fees to Mrs. Knowles.

Husband appeals and presents the following issues for review: (1) Whether the trial court erred in awarding Wife alimony *in futuro* rather than rehabilitative alimony; (2) Whether the trial court erred in awarding Wife alimony *in futuro* and rehabilitative alimony; (3) Whether the trial court's division of parties' property was equitable; (4) Whether the trial court erred in awarding Wife alimony *in solido* for the payment of her attorney's fees.

Since this case was tried by the court sitting without a jury, we review the case ***de novo*** upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge, who has the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. ***McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***Id***.; ***In re Estate of Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

We first address Husband's issues regarding the trial court's award of alimony to Wife. Guidelines for the determination of alimony are set forth in T.C.A. § 36-5-101(d) (2001)[1]. The trial

---

[1]That statute provides, in relevant part:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(continued...)

court is afforded wide discretion concerning the award of alimony, and an appellate court should reverse the trial court's findings only in instances in which this discretion "has manifestly been abused." ***Hanover v. Hanover***, 775 S.W.2d 612, 617 (Tenn. App. 1989). ***See also***, ***Ford v. Ford***, 952 S.W.2d 824, 827 (Tenn. App. 1997).

In this case, Husband argues that the trial court erred in awarding Wife alimony *in futuro*, rather than rehabilitative alimony. In this regard, Husband explains that Tennessee law expresses a clear preference for rehabilitative alimony over any other type of alimony. ***See Self v. Self***, 861 S.W.2d 360, 361 (Tenn. 1993). While we agree with this statement of Tennessee law, a trial court should not grant rehabilitative alimony where rehabilitation is not feasible. ***See Kincaid v. Kincaid***, 912 S.W.2d 140, 143 (Tenn. Ct. App. 1995). Trial courts must, therefore, make a threshold determination after considering all relevant factors concerning the feasability of rehabilitation of the economically disadvantaged spouse. ***See id.*** at 144. The Chancellor in this case made just such a determination in his Supplemental Order.

Here, the trial court found that Wife was economically disadvantaged in relation to Husband, and that her rehabilitation was not feasible. The record indicates that Ms. Knowles has fibromyalgia, a physical condition which makes it difficult and sometimes impossible for her to work. Ms.

---

[1](...continued)

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Knowles testified that she worked as an interpreter for the deaf when she was living in Michigan, but that she is no longer able to interpret because her hands and shoulders "do not work" well enough because of her fibromyalgia.[2]

It appears that the trial court awarded Ms. Knowles a proper amount of support in light of Mr. Knowles' income. Mr. Knowles' average monthly income before taxes is approximately $6,250, based upon an average yearly salary of $75,000.[3] Mr. Knowles' alimony payment of $1,500 per month is not unreasonable, given his income. Additionally, as Ms. Knowles points out in her brief, Mrs. Knowles will pay taxes on the alimony, and Mr. Knowles will receive a tax deduction which will reduce his tax liability. We cannot say that the trial court abused its discretion in setting Mrs. Knowles' alimony at $1,500 per month.

In his appellate brief, Husband makes much of the trial court's reliance on adultery as a factor in setting alimony in this case. Under T.C.A. § 36-5-101(b), the "relative fault" of the parties' is an enumerated factor in determining alimony. This Court has noted that "[t]he most common factors influencing spousal support decisions are the need of the spouse requesting support, the fault of the obligor spouse, and the ability of the obligor spouse to provide support." *Crain v. Crain*, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996). Here, the trial court clearly stated in its Supplemental Order that it had based its decision regarding alimony on Mrs. Knowles' inability to be rehabilitated, on her relative economic disadvantage, as well as upon Mr. Knowles' adulterous relationship. These considerations are proper under the alimony statute, and are well supported in the record.

Husband also points to Wife's statements in the record which indicate that she is hoping to go back to school. Husband testified that Wife intended to return to school for a four or five- year program "so she could get into a line of beauty work where she works at Fox and Company." However, without more specific information regarding Mrs. Knowles' area of study and the definitiveness of Mrs. Knowles' plans, we believe the trial court properly determined that rehabilitation was not feasible. In any event, the decree remains in the court's control and is subject to modification upon a showing of substantial and material change of circumstances. T.C.A. § 36-5-101(a)(1). We therefore affirm the trial court's award of alimony *in futuro*.

The next issue Mr. Knowles raises on appeal is whether the trial court erred in ordering Mr. Knowles to pay Mrs. Knowles' health insurance coverage premiums for twenty-four (24) months and to provide her with COBRA coverage for a total of thirty-six (36) months. Mr. Knowles, in his brief, claims this award constitutes rehabilitative alimony. He asserts that rehabilitative alimony is inconsistent with an award of alimony *in futuro* relying on *Burlew v. Burlew*, 40 S.W.3d 465 (Tenn. 2000).

---

[2]The record also indicates that Ms. Knowles could not work as an interpreter in Tennessee in any case, because she does not have the proper state certification.

[3]Although Mr. Knowles testified that his projected income for 2001 was only $52,000, the record indicates he earned $72,000 in the year 2000 and $77,000 in the year 1999.

Mr. Knowles argues "[a]limony *in solido* is an award for a definite sum of alimony," and insurance premiums may change, the trial court's award of insurance premiums to Wife cannot be alimony *in solido*. At the same time, Mr. Knowles argues that, since the trial court ordered payment of the insurance premiums for a set amount of time, the award cannot be considered alimony *in futuro*, which is alimony "which lacks sum certainty due to contingencies affecting the total amount of alimony to be paid." *Id.* By process of elimination, therefore, Mr. Knowles arrives at the conclusion that the award of healthcare premiums must be rehabilitative alimony. We disagree.

In *Burlew*, the Supreme Court clearly defines the two types of long-term alimony as follows:

> There are two forms of "long term or more open-ended support": alimony in futuro and alimony in solido. "Whether alimony is in futuro or in solido is determined by either the definiteness [in solido ] or indefiniteness [in futuro ] of the sum of alimony ordered to be paid at the time of the award." *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn.1999) (citing *McKee v. McKee*, 655 S.W.2d 164, 165 (Tenn. Ct. App.1983)). Alimony in solido is an award of a definite sum of alimony and "may be paid in installments provided the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded." *Id*. *A typical purpose of such an award would be to adjust the distribution of the parties' marital property. See, e.g., Lindsey v. Lindsey*, 976 S.W.2d 175, 180-81 (Tenn. Ct. App.1997); *Houghland v. Houghland*, 844 S.W.2d 619, 622-23 (Tenn. Ct. App.1992).
> "Alimony in futuro, however, lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid." *Waddey*, 6 S.W.3d at 232. Unlike alimony in solido, an award of alimony in futuro is subject to modification, and its duration may be affected by contingencies agreed upon by the parties or imposed by courts. *Id*. at 232-33; *see also Day v. Day*, 931 S.W.2d 936, 939 (Tenn. Ct. App.1996) ("Final awards of alimony in solido are not modifiable."). As we have noted, *the purpose of this form of alimony is to provide financial support to a spouse who cannot be rehabilitated.*

*Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001) (emphasis added). As the Court notes, courts order alimony *in futuro* and alimony *in solido* for purposes other than rehabilitation.

The trial court determined that Wife's rehabilitation was not feasible, as we have previously noted. The evidence does not preponderate against such a finding. T. R. A. P. 13 (d). Rehabilitative alimony cannot be awarded absent a finding that rehabilitation on the part of the spouse is feasible. *See* T.C.A. § 36-5-101(d)(1); *Kincaid*, 912 S.W.2d at 144. Thus, a provision for payment of insurance premiums for two years is not rehabilitative alimony. There is no definiteness in the

amount of the award, because of the possibility of insurance premiums changing over a period of time. So, the award cannot be alimony *in solido*. ***See Burlew v. Burlew***, 40 S.W.3d at 471. We, therefore, construe the provision for the payment of the insurance premiums to be an additional amount of alimony *in futuro* for the limited period of time involved.

In other words, for a period of 24 months after the decree, Husband is required to pay alimony *in futuro* of $1,500.00 plus a monthly amount for the insurance premium. At the end of two years, the alimony reverts to $1,500.00 total. The trial court determined that there was a need for the additional amount for insurance premiums and that Husband had the ability to pay the premiums for that two year period. Although the premiums for COBRA could have been established by the proof, Husband's counsel asked that Husband be allowed to "shop" for a better rate in providing the same coverage. Thus, the court could have awarded alimony *in solido* for the total amount of the two year premium, but at Husband's request the amount was left uncertain; thus necessitating alimony *in futuro*.

The next issue is whether the division of marital property in this case was equitable. Although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. ***See Bookout v. Bookout***, 954 S.W.2d 730, 731 (Tenn. App. 1997). Thus, an equitable division of the marital property need not be an equal division of the property. ***See id.*** A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. ***See Ford v. Ford***, 952 S.W.2d 824, 825 (Tenn. App. 1997). Guidelines for the equitable division of marital property are set forth in T.C.A. § 36-4-121(c) (2001). That statute provides, in relevant part:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution

of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

> (6) The value of the separate property of each party;

> (7) The estate of each party at the time of the marriage;

> (8) The economic circumstances of each party at the time the division of property is to become effective;

> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

> (10) The amount of social security benefits available to each spouse; and

> (11) Such other factors as are necessary to consider the equities between the parties.

T.C.A. § 36-4-121(c)(2001).

The trial court awarded Wife $24,950.00 in marital property, and assigned $9,500.00 of marital debt to her, resulting in a net award of $15,450.00. The trial court awarded Husband $16,100.00 in marital property and assigned $8,350.00 in marital debt to him, resulting in a net award of $7,750.00. In his brief, Mr. Knowles acknowledges that the trial court "approved the property division proposed by Husband and adopted the same values therein." The trial court, however, did make one change to Mr. Knowles' proposed property division, when it ordered Mr. Knowles to, "pay to Plaintiff the sum of Four Thousand and no/100 Dollars ($4,000.00) for her Visa account." It is this additional payment of $4,000.00 which Mr. Knowles disputes on appeal. With this $4,000.00 alimony *in solido* award, Mrs. Knowles net property division is $19,450.00, while Husband's net property division is decreased to $3,750.00. By our calculations, this leaves Mrs. Knowles with $15,700.00 more than Mr. Knowles, or a 83.5% to a 16.5% division in favor of Mrs. Knowles. Considering the record as a whole, we find this to be an inequitable division of martial property, and the final decree should be modified accordingly by reversing that part of the decree awarding alimony *in solido* of $4,000.00.

Finally, Mr. Knowles takes issue with the trial court's award of $1,700.00 in attorney's fees to his wife. The law affords the trial court discretion concerning the award of attorney's fees in a divorce case. *See Long v. Long*, 957 S.W.2d 825, 827 (Tenn. App. 1997). On appeal, an appellate court will not interfere with the trial court's decision except upon a showing of an abuse of that discretion. *See id.* In the case at bar, we believe the award of attorney's fees to Wife was proper,

especially given Husband's fault and Wife's poor financial situation. This issue is, therefore, without merit.

The final decree is reversed as to the award to Wife of $4,000.00 for her Visa account. The decree is affirmed in all other respects, and the case is remanded to the trial court for such further proceedings as are necessary. Costs of this appeal are assessed to appellant, Jack Reed Knowles, and his sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.