IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 16, 2002 Session

## HELEN LOUISE HALL v. JAMES WILLIAM HALL

**A Direct Appeal from the Chancery Court for Tipton County**
**No. 17,456     The Honorable Martha B. Brasfield, Chancellor**

_____

**No. W2002-00786-COA-R3-CV - Filed November 19, 2002**

_____

Plaintiff-wife sued defendant husband for a divorce on the grounds of inappropriate marital conduct and irreconcilable differences. After a nonjury trial, a divorce was awarded to wife and she was awarded alimony *in futuro* and part of her attorney fees. Husband has appealed the award of *in futuro* alimony. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Walter Bailey, Memphis, For Appellant, James William Hall

Paul E. Lewis, Millington, For Appellee, Helen Louise Hall

### OPINION

Plaintiff, Helen Louise Hall (Wife), sued defendant, James William Hall (Husband), for divorce on the grounds of irreconcilable differences and inappropriate marital conduct. Husband filed an answer denying the material allegations of the complaint. A nonjury trial was held on November 29, 2001. The parties have stipulated that the statement of the evidence[1] prepared by defendant's counsel contains "all of the evidence offered or introduced on the trial of this case, and all objections, rulings, orders and all other proceedings of this trial." The statement of the evidence was approved by the trial court, and we quote the relevant part thereof at length:

---

[1] The document was titled Defendant's Narrative Bill of Exceptions" regarding the evidence, under Rule 24, Appellate Rules of Procedure. We will refer to it only as the statement of the evidence.

The Plaintiff, Helen Louise Hall, and the Defendant, James William Hall, married in 1982, and had one child born during the marriage who had become 18 years of age at the time of the November 29, 2001 trial date.

The parties owned real estate that was purchased in 1985 for $25,000.00, and served as the marital residence, and at the time of the hearing herein had a depreciated value of $20,000.00, with need of some repair. It has an equity value of $6,000.00.

The marriage of the parties lasted until sometime in 1998 when the Defendant left the Plaintiff at the marital residence in Tennessee, and resumed living with his previous wife in the State of Arkansas.

After the Defendant left the Plaintiff, he entered into a consent order to pay child support in the amount of $643 monthly in June of 1999. The Plaintiff testified that Defendant failed to contribute other than the child support to the household expenses and though employed, she had to borrow money from her sister, and was unable to make the mortgage payments since she could not rely on contributions from the Defendant any longer. She testified that she went into Chapter 13 of the United States Bankruptcy Act and is currently paying her monthly mortgage payments and other debts through the bankruptcy plan which will terminate some time in April of 2002.

The Plaintiff testified that she has been employed at Turner Dairy since 1995, and earns approximately $1,850 per month from which she nets $750 after the deductions from the Chapter 13 plan of the Bankruptcy Act. Her employment at Turner Dairy primarily consists of loading dairy products on the delivery trucks and includes items up to 60 pounds.

Plaintiff is now 52 years of age, finished the ninth grade, and constantly held odd jobs in her work history until she was employed by Turner Dairy in 1995. She is in good health except for a problem she occasionally has with a knot on her foot. She has health insurance at her employment, and participates in a 401-K retirement benefit program which is valued at $1,000.00. Her assets include a 1993 Mitsubishi automobile valued at approximately $2,000.00 with a debt remaining on it of $2,935.00 and household goods she valued at $500. The Plaintiff admitted that she went to Tunica, Mississippi,

and gambled at casinos approximately three times per month and won $16,000.00.

The Defendant stipulated to the ground of inappropriate marital conduct and admitted leaving the Plaintiff in 1998 to return to his former wife.

The Defendant testified that he is 57 years old, has worked at Wire and Iron Works, Inc. in Memphis, Tennessee, and earns approximately $1,100 weekly for a 40 hour week. After deductions, he receives a net pay of $729.83. Defendant has no retirement or pension plan with his company and owns no real or personal property of value except a 1979 El Camino automobile.

The Defendant has experienced some health problems, and in January of 2001 suffered a heart attack, and was hospitalized for approximately seven days, and lost approximately two weeks from his employment. He also had a second heart attack in October of 2001, which required a second hospital confinement of four days and some time off from work. Although he has health insurance at his employment, he incurred for his medical treatment a debt of $2,500 over the amount of his insurance coverage which is outstanding.

The parties agreed that the Plaintiff would be awarded the house, and she would pay the house notes and hold the Defendant harmless regarding any loans. They further agreed that the Defendant should retain $2,000 that he has in his personal savings.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Both parties testified that their Affidavit of Income and Expense was correct, except that the Defendant's medical expenses are ongoing, and the twenty-five hundred dollars ($2,500) per month figure that he showed for medical expenses was inaccurate, but that amount was simply owed for his latest medical treatment. He does not have twenty five hundred dollars ($2,500) in medical expenses each month, and in fact is covered by medical insurance.

By final decree of divorce entered March 21, 2002, plaintiff was granted an absolute divorce on the grounds of inappropriate marital conduct, and the decree further provides:

**IT FURTHER APPEARS** that the Plaintiff is in need of alimony in futuro and that the Plaintiff is not capable of being economically rehabilitated based on her age, education and work experience.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

That the Defendant shall pay to the Plaintiff the sum of thirteen hundred dollars ($1,300) per month as and for alimony in futuro for the sum of five months with the first payment being due on December 1, 2001, and the first day of each consecutive month for 5 consecutive months.

**IT IS FURTHER ORDERED** that the Defendant shall pay the sum of nine hundred dollars ($900) per month as and for alimony in futuro beginning on May 1, 2002, and the first day of each consecutive month until further modified by the Court.

**IT IS FURTHER ORDERED** that the Defendant shall pay the sum of seventeen hundred and fifty dollars ($1,750) as a partial attorney's fee award as attorney's fee for the Plaintiff, and that this amount is hereby reduced to judgment for which execution issue.

Defendant appeals and presents the following issues for review.

1. Whether the trial court erred in awarding the Plaintiff alimony.

2. Whether the trial court erred in awarding the Plaintiff alimony **in futuro**.

We will consider the issues together.

Guidelines for the determination of alimony are set forth in T.C.A. § 36-5-101(d) (Supp. 1997). The trial court is afforded wide discretion concerning the award of alimony, and an appellate court should reverse the trial court's findings only in instances in which this discretion "has manifestly been abused." *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989); *Ford v. Ford*, 952 S.W.2d 824, 827 (Tenn. Ct. App. 1996).

Section 36-5-101(d)(1) provides a list of factors that must be considered by a court in determining whether to award rehabilitative support and maintenance to an economically disadvantaged spouse. Although no single factor is necessarily controlling, consideration of "all relevant factors" is mandatory. Under T.C.A. § 36-5-101(d)(1), relevant factors include:

-4-

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.


Defendant first presents for review the issue of whether the chancellor erred in awarding Plaintiff alimony. The basis for this issue is Defendant's assertion that the record on appeal does not

support the chancellor's finding that Plaintiff is economically disadvantaged pursuant to the factors set forth in T.C.A. § 36-5-101(d)(1).

In the concluding paragraph of his appellate brief, and in his opening statement to this court during oral argument, Defendant's counsel rephrased the primary issue in this case as a question of whether the trial court failed to properly apply the factors set forth in § 36-5-101(d)(1). For the reasons that follow, we reject Defendant's assertion that the evidence in the record does not support an award of alimony or, in the alternative, that the chancellor failed to properly apply the § 36-5-101(d)(1) factors.

Defendant's contention that the record does not support an award of alimony is based on his individual analysis of each § 36-5-101(d)(1) factor. While Defendant's analysis contains a certain degree of merit, we are not convinced that the chancellor abused her discretion in granting Plaintiff alimony. In his brief to this court, Defendant disputes the chancellor's analysis, or alleged lack of analysis, of the § 36-5-101(d)(1) factors by highlighting several facts that Defendant interprets as weighing against an award of alimony.

Defendant supports his assertion that Plaintiff was not economically disadvantaged by pointing to the fact that Plaintiff had a retirement savings account, was awarded essentially all of the marital property, including the marital home and her automobile, and possessed $16,000.00 in gambling winnings – a fact that Defendant contends the trial court failed to consider. Defendant further asserts that the trial court miscalculated Plaintiff's monthly expenses, reasoning that the record indicates that Plaintiff nets $754.00 per month "after most of her major debts have been deducted from her paycheck pursuant to the Chapter 13 plan."

In addition to the trial court's alleged failure to consider Plaintiff's gambling earnings as part of her separate assets, Defendant also contends that the trial court "made no findings" with regard to Plaintiff's tangible and intangible contributions to the marriage, or the potential tax consequences of the alimony award. Defendant reasons that, "in the absence of any such evidence" with regard to these factors, § 36-5-101(d)(1)(J) and § 36-5-101(d)(1)(L) do not support the court's award of alimony.

However, looking at the evidence contained in the statement of the evidence and the chancellor's findings in her Final Decree of Divorce, we do not conclude that the trial court committed an abuse of discretion. The most critical factors in awarding alimony are need and the ability to pay. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995) (citing *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993); *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984); *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn. Ct. App. 1981)). From our reading of the evidence, we find support for the chancellor's conclusion that Plaintiff is economically disadvantaged, and the implication that Plaintiff has demonstrated need and Defendant is financially capable of providing maintenance. Although Defendant disputes the trial court's calculation of Plaintiff's monthly expenses, it is undisputed that Defendant's monthly net income far exceeds that of Plaintiff. Further, the evidence indicates that Plaintiff was forced into Chapter 13 bankruptcy as

a result of her inability to make mortgage payments and keep up with other monthly expenses. Additionally, there is no evidence in the record to indicate that Plaintiff is capable of securing better employment in her current condition or successfully completing training or adult education courses that would allow her to earn a more lucrative income in the future.

As for Defendant's assertion that the trial court failed to properly apply the factors of § 36-5-101(d)(1) to the case at bar, we need only quote from the chancellor's Final Decree of Divorce to refute this argument.

> **IT FURTHER APPEARS** that the Court has taken into consideration the factors contained in T.C.A. § 36-5-101, and specifically finds that all of these factors, with the exception of (F), indicate that the Plaintiff is economically disadvantaged and not subject to economic rehabilitation.
>
> **IT FURTHER APPEARS** that the Plaintiff has a ninth-grade education and is 52 years of age and has consistently held odd jobs during the marriage until she began work for Turner Dairies in 1995. While she has minor health problems, she does have health insurance at her employment. At Turner Dairies, she acts as a laborer and loads trucks with various dairy products in the approximate weight of 60 pounds per case and does this from 3 a.m. to 11 a.m. each day. The Court specifically finds that the Plaintiff is economically disadvantaged and is not capable of being economically rehabilitated. Pursuant to the affidavits filed by the Parties, the Plaintiff has expenses of approximately two thousand dollars ($2,000) per month and nets seven hundred fifty-four dollars per month after deductions for bankruptcy, car payments and other debts. The Court further finds that the Plaintiff should not decrease her standard of living as the result of the misconduct of the Defendant.
>
> **IT FURTHER APPEARS** that the Defendant is 57 years of age and is employed as a shop foreman at Memphis Wire and Iron Works, Inc., and has been since 1985 and earns approximately fifty-three thousand, six hundred fifty-nine dollars ($53,659) per year with his current monthly gross to be approximately four thousand, seven hundred sixty-six dollars ($4,766) per month. The Defendant has a tenth grade education and has transferrable job skills, and pursuant to the affidavit filed by the Defendant, the Defendant has a current monthly gross of approximately four thousand six hundred and sixty-six dollars ($4,666) with monthly expenses of sixteen hundred fifty-three dollars ($1,653).

In her final decree, the chancellor specifically cites to § 36-5-101(d)(1) and proceeds to address several facts that contributed or weighed in her decision to award alimony. From the passage cited above, it is obvious that the chancellor considered the age, education, income, earning capacity, expenses, and current employment of each party. Although the chancellor does not provide a detailed analysis of every § 36-5-101(d)(1) factor, we find that she presents an adequate comparison of the parties' economic and occupational positions, so as to justify a finding that Plaintiff was economically disadvantaged and therefore deserving of an award of alimony.

Defendant's second issue on appeal is whether the trial court erred in awarding Plaintiff alimony *in futuro*. Defendant argues that even if the trial court's finding that Plaintiff was entitled to an award of alimony was correct, Plaintiff is entitled only to rehabilitative alimony as opposed to long-term support. T.C.A. § 36-5-101(d)(1) sets forth the guidelines for determining whether rehabilitative alimony should be granted over an award for long-term spousal maintenance.

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony.

The trial court should only grant alimony *in futuro* when rehabilitation is not feasible. *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992). Thus, there must be a threshold determination by the trial judge that, considering all relevant factors, rehabilitation of the economically disadvantaged spouse is not feasible. *Id*. In her Final Decree of Divorce, the chancellor concluded that, after considering all of the factors set forth in T.C.A. § 36-5-101(d)(1), "with the exception of (F)," the Plaintiff was economically disadvantaged and ultimately not subject to economic rehabilitation.

In his brief, defendant likens Plaintiff to the plaintiff-wife in *Kincaid v. Kincaid*, 912 S.W.2d 140 (Tenn. Ct. App. 1995). In *Kincaid*, this court modified the trial court's award of alimony *in futuro* to an award of rehabilitative alimony based on our finding that the wife was a candidate for rehabilitation because of her previous employment experience and the availability of adult education courses that would allow wife to overcome the obstacles standing between her and a higher paying job. *Id*. at 144. Defendant notes that, similar to the wife in *Kincaid*, plaintiff is a middle-aged woman of limited education. He further asserts that our holding in *Kincaid* on the issue of

rehabilitative alimony supports a conclusion that plaintiff could be economically rehabilitated through further education or job training.

We reject defendant's assertion, finding that Plaintiff is distinctly different from the plaintiff-wife in *Kincaid*. Despite similarities in age and education, there are not enough shared variables to equate the respective plaintiffs. Prior to and during part of her marriage, the *Kincaid* wife enjoyed a "successful career handling claims for various insurance companies." *Id*. According to the opinion, the plaintiff-wife received promotions, raises, and monthly honors during her employment. *Id*. Despite her past professional success, plaintiff-wife felt that she was no longer qualified for many jobs due to her lack of computer skills. *Id*. We determined that adult education courses in computer literacy would "help her overcome this hurdle." *Id*.

In the case at bar, there is no indication in the record that Plaintiff is a candidate for continued education or training, or that such education or training would even be relevant or available. Plaintiff is a 52 year-old woman with a ninth-grade education, who has worked exclusively as a laborer with Turner Dairy since 1995. Defendant has offered no evidence that Plaintiff is qualified for any job above that of a laborer, or that Plaintiff could be qualified for a higher position with increased education. Rather, the record provides that Plaintiff has worked in the same or similar job for the past seven years. With regard to Plaintiff's work performance, there is no evidence to suggest that Plaintiff has received any promotions, unscheduled raises, or monthly honors during the course of her employment with Turner Dairy. We, therefore, cannot agree with defendant's reliance upon *Kincaid* as precedent demanding an award of rehabilitative alimony rather than alimony *in futuro*.

Applying the factors set forth in T.C.A. § 36-5-101(d)(1), we agree with the chancellor's finding that "the Plaintiff is not capable of being economically rehabilitated based on her age, education and work experience."

Several other § 36-5-101(d)(1) factors weigh in support of an award of permanent alimony. The record indicates that Plaintiff was forced to file for Chapter 13 bankruptcy in order to satisfy her monthly mortgage payments. In addition to her mortgage debts, the chancellor found that Plaintiff has monthly expenses of approximately $2,000.00. These expenses far exceed Plaintiff's monthly net income, even after "deductions for bankruptcy, car payments, and other debts." Further, despite Plaintiff's testimony that she won $16,000.00 in gambling earnings, there is no evidence that she still possesses any portion of her winnings. Of some importance is the fact that Defendant admitted to abandoning his marriage to Plaintiff to return to his former wife in Arkansas.

Although some of the § 36-5-101(d)(1) factors, when applied to the case at bar, could be interpreted as weighing in favor of an award of rehabilitative alimony, we find that the chancellor's discretionary decision was not "based on a misapplication of the controlling legal principles or on a clearly erroneous assessment of the evidence." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). Further, we determine that the trial court's decision was not against logic or reasoning, and did not cause an injustice or injury to the complaining party. *Marcus v. Marcus*, 993

S.W.2d 596, 601 (Tenn. 1999); ***Douglas v. Estate of Robertson***, 876 S.W.2d 95, 97 (Tenn. 1994). From the facts provided in the record, we find no abuse of discretion by the trial court.

Accordingly, the decree of the trial court is affirmed and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, James William Hall, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.