IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 3, 2002 Session

# DOROTHY RAULT HEIDEMAN v. RICHARD LAWRENCE HEIDEMAN

**Direct Appeal from the Circuit Court for Shelby County**
**No. 163626 R.D.; The Honorable Karen R. Williams, Judge**

---

**No. W2001-01486-COA-R3-CV - Filed November 27, 2002**

---

This appeal arises from a divorce initiated by the wife. The trial court granted the wife a divorce based on adultery. The marital property was divided giving the wife approximately 55% or $650,491.00 and giving the husband approximately 45% or $533,731.00. The trial court found that the wife could not be rehabilitated and ordered the husband to pay $2,500.00 per month in alimony *in futuro.* Additionally, the wife was awarded $15,000.00 in attorney's fees. Husband raises issues regarding the award of alimony *in futuro* and attorney's fees for our review. For the following reasons, we affirm in part as modified and reverse in part.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified in Part and Reversed in Part**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Joe M. Duncan, Memphis, TN, for Appellant

Leslie Gattas Coleman, Pounders Coleman, Memphis, TN, for Appellee

## OPINION

### I. Facts and Procedural History

This is a divorce case. Dr. Richard L. Heideman (Husband) and Dorothy Rault Heideman (Wife) were married on February 7, 1976. The parties separated in 1999 in Shelby county. The Heidemans had one child who was twenty years of age at the time of separation. Wife filed for divorce on August 26, 1999, alleging inappropriate marital conduct and irreconcilable differences. On December 11, 2000, Wife amended her complaint to allege adultery. During the marriage, Wife worked as a teacher and Husband as a pediatric oncologist. Husband is employed by St. Jude Children's Research Hospital where he earns $175,020 per year and is given matching funds for his

retirement account by his employer. Wife, who holds a Master's Degree, teaches at St. Benedict at Auburndale School where she receives a salary of $26,811 per year. Husband and Wife agreed to attempt to resolve personal property matters through mediation and submitted all other matters for trial.

After trial, in a Final Decree of Divorce, dated May 16, 2001, the lower court made the following findings pertinent to the issues raised on appeal: that both parties are in their early fifties and neither has unusual health problems; that divorce be granted to Wife on the basis of adultery; that the marital property totaling $1,184,222.00 be divided 54.93% or $650,491.00 to Wife and 45.07% or $533,731.00 to Husband; and that the Wife had an additional $4000 per year in income from oil and gas royalties.

On the issue of alimony, the trial court found rehabilitative alimony inappropriate because Wife already holds a Master's degree. After noting neither Husband's nor Wife's proposed post-divorce budget was "out of line," the court found that Wife had needs and that Husband had the ability to pay. The trial court awarded Wife $2,500 a month in alimony *in futuro* and $15,000 for partial payment of attorney's fees. Husband timely filed a notice of appeal to this Court.

Husband presents the following four issues for our review:

I. Did the trial court err in awarding Wife $2500 per month as alimony *in futuro*?
II. Did the trial court err in refusing to require Wife to utilize the unearned income that she receives from her oil royalty payments and the income she could receive upon investment of the assets that she received as a division of marital property?
III. Did the trial court err in ordering Husband to pay $15,000 toward Wife's legal fees considering that she received almost fifty-five percent of the marital assets?
IV. Did the trial court err in refusing to consider the offer of proof by Husband concerning the relative degree of fault by the parties as it may affect the payment of alimony?

## II. Standard of Review

The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also Bank/First Citizens v. Citizens and Assoc.*, 82 S.W.3d 259, 262 (Tenn. 2002) (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). A trial court's ruling on a matter of law, however, will be reviewed "'under a pure *de novo* standard . . . according no deference to the conclusions of law made by the lower court[].'" *Bank/First Citizens*, 82 S.W.3d at 727 (quoting *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)). A trial court's award of an amount of alimony will not be disturbed unless the trial court has abused its discretion. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)).

### III. Law and Analysis

### A. Alimony

Husband's first two issues are interrelated and thus will be addressed together. Husband first asks whether the trial court erred in awarding Wife $2,500 a month alimony *in futuro*. Husband next asks whether the trial court erred in not requiring Wife to defray her monthly expenses by utilizing the income she receives from oil royalties and by taking into account income Wife could receive from investing the property she received as part of the property division made in this case. The Tennessee Supreme Court in its recent decision, *Robertson v. Robertson*, 76 S.W.3d 337 (Tenn. 2002), held that when a trial court is determining the nature and extent of support for a disadvantaged spouse, it must "consider every relevant factor" in Tenn. Code Ann. § 36-5-101(d)(1). Similarly, in *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001), our Supreme Court stated that when a trial court considers the purpose of the alimony award, along with the factors set forth in Tenn. Code Ann. § 36-5-101(d), the trial court is given wide discretion in making an alimony award. The *Burlew* court further noted that the purpose of alimony *in futuro* is to "provide financial support to a spouse who cannot be rehabilitated." *Id.* at 471. The most important considerations are the "real need" of the disadvantaged spouse and ability of the obligor spouse to pay. *Id.* at 470 (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)).

Before further analysis, a summary of the trial court's findings on the factors listed in Tenn. Code Ann. 36-5-101(d)(1)(A) through (L)[1] is in order. Tenn. Code Ann. §

---

[1] The statute reads:

(d) (1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(continued...)

101(d)(1)(A) directs the court to consider "[t]he relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources." The trial court found that Husband makes six times the salary of Wife. After considering the proposed monthly needs of each party as outlined in their respective Rule 14(c) memoranda, the trial court determined that neither Husband's nor Wife's proposed budget was "out of line" considering their standard of living. Wife's Rule 14(c) Memorandum shows that Wife's net monthly income is $2,070.37 and her projected budget is approximately $5000 leaving a shortfall of approximately $3000. Wife did not, however, include her income from oil royalties that she receives. The lower court, after hearing extensive testimony on the value of these royalties from both Husband's financial expert and Wife's financial expert, set the value at $333.00 per month "in actual dollars for use by wife." Thus, while not explicitly stating so, it seems the lower court found Wife's need to be approximately $2,700. Husband's Rule 14(c) Memorandum showed a net income of $8,931.00 per month and a budget of $6,580.00 leaving a surplus of approximately $2350.00.

As to section (B), the trial court found that Wife holds a Master's degree and that there was no proof that further education would improve her earning capacity as a teacher. The length of the marriage was twenty-five years--a long marriage for purposes of section (C). For sections (D) and (E), the Final Decree of Divorce notes that both parties are in their early fifties and that neither has any noteworthy health problems. Section (F) does not apply

---

[1](...continued)

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

because the Heideman's son is not a minor. Under section (G), separate property, the parties divided most of their personalty amongst themselves, and it does not appear that the court made any specific findings as to any other separate property. In the division of marital property, for purposes of section (H), Wife was given 54.93% or $650,491.00 and Husband was given 45.07% or $533,731.00. The standard of living of the parties during the marriage, to be considered in section (I), was relatively high, as noted by the trial court when approving the proposed budgets of the parties. As to section (J), there was testimony as to the contributions each party made to the marriage, but the trial court made no finding on this issue. The trial court declined to consider the relative fault of the parties for the purposes of section (K). No specific findings appear relating to section (L).

After considering these factors, the trial court found that "rehabilitative alimony would not be appropriate" because Wife holds a Master's degree in education and there was no proof that Wife's earning capacity could be increased by further education. The trial court instead awarded the wife alimony *in futuro* in the amount of $2,500 a month. It is apparent from the record that the trial court properly considered all of the factors listed above and in its discretion awarded alimony *in futuro* rather than the preferred rehabilitative alimony. We find no abuse of discretion in the award of alimony *in futuro*.

Husband questions whether the trial court properly calculated Wife's needs in setting this amount. First, Husband questions whether the trial judge considered income that Wife receives from oil and gas royalties. Husband and Wife presented extensive testimony from their respective financial experts concerning the value of these royalties. The trial court set the value of this asset at $4,000 per year or $333.33 per month "in actual dollars for use by Wife." We see no error in this decision. Next, Husband questions the finding that Wife should not "have to invade either the corpus of her division of the marital assets or its earnings each month to pay daily living expenses." The trial court felt that this money should be used either for the purchase of a home or to increase Wife's retirement fund. Husband, citing section 36-5-101(d)(1)(A) which directs a court to consider "income from . . . all other sources," argues that the trial court should have taken into account, when determining Wife's needs, the income that Wife's sizeable property settlement could bring if invested. Husband further argues that the trial court, when setting the amount of alimony, did not take into account the "provisions made with regard to the marital property as defined in § 36-4-121" as is required by Tenn. Code Ann. 36-5-101(d)(1)(H). We find Husband's arguments on this issue persuasive.

We agree with the trial court that Wife has need and that Husband has ability to pay, however, we cannot agree that potential earnings from Wife's sizeable property settlement should not be taken into consideration when calculating her "daily" needs. Wife received $366,415.00 in cash accounts and $251,263.00 in retirement assets. Wife's proposed budget includes $1,500 a month for housing expenses, yet the trial court found that "[i]t is unreasonable for Wife to have to invade either the corpus of her division of the marital assets or its earnings each month" to meet her expenses because that money should be "set aside"

either to purchase a new home or to fund Wife's retirement to a level "as comfortable" as Husband expects. We find that the trial court abused its discretion in making this determination.

Tennessee Code Annotated section 36-5-101(d)(1)(A) instructs that "income from . . . all other sources" be considered in setting the amount of alimony and Section 36-5-101(d)(1)(H) requires a court to consider the division of marital assets when making this same determination. We find that an analysis under the factors listed above, including section (A) and section (H) requires a modification of the amount of alimony Wife is to receive because the marital property division will provide her with additional income that should be used to decrease her "real needs." While there are a myriad of investment possibilities available to Wife, if she were to invest the $366,415.00 and were to receive a 5% rate of return,[2] she would have approximately $1,500.00 a month in additional income. Even if Wife does nothing more than deposit this sum into a bank account making as little as 2% interest, she would receive an additional $610.00 a month in income. Alternatively, Wife may choose to spend the money, either buying a house with the lump sum, or in some other fashion. Regardless of which option she chooses, the use of the property settlement awarded to Wife reduces the needs she outlined the proposed budget accepted by the trial court. Accordingly, we modify the amount of *in futuro* alimony awarded to Wife by the trial court downward from $2,500.00 to $2,000.00 per month.

## B. Award of Attorney's Fees.

Husband next asks whether the trial court erred in awarding Wife $15,000.00 as attorney's fees. An award of attorney's fees is considered alimony *in solido*. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001) (citing *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996)). Because attorney's fees are an award of alimony, a trial court must apply the statutory factors of Tenn. Code Ann. § 36-5-101. *Sullivan v. Sullivan*, No. M2001-0325-COA-R3-CV, 2002 Tenn. Ap. LEXIS 641, at *12 (Tenn. Ct. App. 2002) (citing *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995)). The most important factors in an award of alimony are the need of the disadvantaged spouse and the ability of the obligor spouse to pay. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)). A trial court's award of alimony will not be disturbed unless the trial court has abused its discretion. *Id.* (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). In the case at bar, the trial court awarded Wife $15,000 as attorney's fees. Wife was given approximately 55% or $650,491.00 of the marital property. We find that Wife has no need in light of the substantial amount of marital property Wife received as well as the other statutory factors considered above. Thus, we reverse the award of attorney's fees.

---

[2] While both Husband and Wife's financial experts testified to various rates of returns that might be expected if the Wife were to invest the money, Wife's expert testified to a possible 5% rate, the lowest mentioned by either expert.

## C.  The Trial Court's Refusal to Consider the Relative Fault of the Parties

Lastly, Husband asks whether the trial court erred in refusing to consider the relative fault of the parties when setting the amount of alimony.  Tenn. Code Ann. 36-5-101(d)(1)(K) states that the court may consider "[t]he relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so."

During her case in chief, Wife put on testimony about Husband's ongoing adulterous affair.  The court stated after hearing testimony from Husband's paramour that "[b]y [Husband's] own admission, by the admission of the witness on the stand right now, I find that the divorce will be granted on grounds of adultery.  That ends it."  The court informed the parties that the only other testimony that would be heard on the subject would be used to determine if there was a dissipation of assets by either party.  When Husband began to put on his proof, he attempted to introduce testimony concerning problems in the marriage.  Wife objected to the testimony stating that she understood there would be no further testimony relating to fault.  The trial court sustained the objection stating "[t]his case is boiled down to a division of assets . . . ." and  "I'm not going to balance fault."

The pertinent statute gives the trial court discretion whether to balance fault or not. We find no abuse of discretion in the trial's courts decision not to balance fault in the current case and thus deny Husband's contention on this issue.

## IV.  Conclusion

The award of alimony *in futuro* is affirmed as modified to $2,000.00 per month.  The award of attorney's fees is reversed. Costs of this appeal are taxed equally to the Appellant, Richard Lawrence Heideman, and his surety, and the Appellee, Dorothy Rault Heideman, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE